01

02

03

04

05

06                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
07                                  AT SEATTLE

08  BARBARA A. KOLVICK,                    )
                                           )    CASE NO. C10-1804-JCC
09          Plaintiff,                     )
                                           )
10      v.                                 )    REPORT AND RECOMMENDATION
                                           )    RE: SOCIAL SECURITY DISABILITY
11  MICHAEL J. ASTRUE, Commissioner        )    APPEAL
    of Social Security,                     )
12                                         )
            Defendant.                     )
13  _____)

14          Plaintiff Barbara A. Kolvick proceeds through counsel in her appeal of a final decision

15  of the Commissioner of the Social Security Administration (Commissioner).   The

16  Commissioner denied plaintiff's applications for Supplemental Security Income (SSI) and

17  Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ).

18  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of

19  record, the Court recommends that this matter be REMANDED for further administrative

20  proceedings.

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1962.[1]   She completed her GED (AR 32) and previously worked as a general clerk, cook, data clerk, order picker, and maid/housekeeper (AR 70-71.)

Plaintiff filed applications for DIB and SSI in February 2008, alleging disability beginning March 1, 2006.  (AR 171, 174.)[2]   Her date last insured for DIB is December 31, 2010.  (AR 11.)   Plaintiff's applications were denied at the initial level and on reconsideration, and she timely requested a hearing.

ALJ Mattie Harvin-Woode held a hearing on January 21, 2010 and took testimony from plaintiff and a vocational expert (VE).  (AR 27-80.)  On April 16, 2010, the ALJ issued a decision finding plaintiff not disabled.  (AR 9-19.)

Plaintiff timely appealed.  The Appeals Council, on July 16, 2010, denied plaintiff's request for review (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be

---

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

2 The Commissioner denied earlier applications.  (AR 88.)  Although plaintiff originally argued that the ALJ de facto opened the initial denial of her prior applications, she withdrew this argument in her reply.  (*See* Dkts. 18 & 23.)

01 determined whether the claimant is gainfully employed. The ALJ found that plaintiff had not

02 engaged in substantial gainful activity (SGA) during the period at issue. She noted that

03 plaintiff's 2007 and 2008 work in "maid services" did not rise to the level of SGA. (AR 11.)

04 At step two, it must be determined whether a claimant suffers from a severe impairment. The

05 ALJ found plaintiff's dysthymia, bipolar disorder, posttraumatic stress disorder, borderline and

06 histrionic personality traits, and polysubstance abuse including benzodiazepine dependence

07 severe. She found other impairments, including diagnoses of Bell's palsy, chronic obstructive

08 pulmonary disease (COPD)/asthma, headaches, and knee problems not severe.

09 Step three asks whether a claimant's impairments meet or equal a listed impairment.

10 The ALJ found plaintiff did not have an impairment or combination of impairments that met or

11 medically equaled a listing. She completed the "Psychiatric Review Technique" (PRT) or

12 "special technique" by assessing the degree and severity of functional limitations resulting from

13 plaintiff's mental impairments. 20 C.F.R. §§ 404.1520a(c),(d), 416.920a(c),(d). She found

14 mild restriction in activities of daily living, moderate difficulties in social functioning and with

15 regard to concentration, persistence, or pace, and no extended episodes of decompensation.

16 If a claimant's impairments do not meet or equal a listing, the Commissioner must

17 assess residual functional capacity (RFC) and determine at step four whether the claimant has

18 demonstrated an inability to perform past relevant work. The ALJ assessed plaintiff as able to

19 perform the full range of work at all exertional levels, but with the following nonexertional

20 limitations: she can perform simple and some detailed tasks; she is limited to minimal

21 interaction with the general public; and she must avoid concentrated exposure to fumes and

22 gases. With this RFC, the ALJ found plaintiff able to perform her past relevant work as a

01  maid/housekeeper and order picker.

02      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

03  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

04  an adjustment to work that exists in significant levels in the national economy.   Finding

05  plaintiff not disabled at step four, the ALJ did not proceed to step five.

06      This Court's review of the ALJ's decision is limited to whether the decision is in

07  accordance with the law and the findings supported by substantial evidence in the record as a

08  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

09  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

10  reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

11  F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

12  supports the ALJ's decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

13  F.3d 947, 954 (9th Cir. 2002).

14      Plaintiff asserts that she did not have past relevant work as a housekeeper, as recognized

15  by the ALJ's own finding that that work did not rise to the level of SGA.   (AR 11); 20 C.F.R.

16  §§ 404.1560(b)(1), 404.1565(a), 416.960(b)(1), 416.965(a).   Plaintiff further argues that the

17  ALJ gave a deficient hypothetical to the VE in not including her moderate difficulties in

18  concentration, persistence, or pace, that the ALJ erroneously evaluated the opinions of two

19  physicians and failed to evaluate the side effects of her medication, that the step four decision

20  was deficient, and that the ALJ made mistakes of fact in relation to her knee condition.   She

21  requests remand for further administrative proceedings.

22      The Commissioner does not take issue with the contention that plaintiff's work as a

01  maid/housekeeper does not constitute past relevant work.   Accordingly, the Court need only

02  consider the ALJ's finding as to the order picker job.   The Commissioner otherwise argues that

03  the ALJ's decision is supported by substantial evidence and should be affirmed.

04  <u>Moderate Difficulties in Concentration, Persistence, or Pace</u>

05  Plaintiff notes that neither the RFC assessment, nor the corresponding hypothetical to

06  the VE included the ALJ's step two and three conclusion as to plaintiff's moderate difficulties

07  in concentration, persistence, or pace.   She argues that the restriction to "simple and some

08  detailed tasks" in the RFC assessment (AR 14) and to "simple tasks and some complex tasks[]"

09  in the hypothetical (AR 71) does not *ipso facto* or reasonably account for the moderate

10  limitation assessed.   *See*, *e.g.*, *Thomas*, 278 F.3d at 956 (recognizing that an ALJ's

11  hypothetical should account for deficits in concentration, persistence, or pace); *Winschel v.*

12  *Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011) (concluding that a hypothetical

13  should either explicitly include or implicitly account for limitations in concentration,

14  persistence, and pace identified during the step two and three PRT); *O'Connor-Spinner v.*

15  *Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010) ("[F]or most cases, the ALJ should refer expressly

16  to limitations on concentration, persistence and pace in the hypothetical in order to focus the

17  VE's attention on these limitations and assure reviewing courts that the VE's testimony

18  constitutes substantial evidence of the jobs a claimant can do.")   Plaintiff notes that the VE in

19  this case stated that she did not consider any deficit in concentration when answering the ALJ's

20  hypothetical.   (AR 76-77.)

21  The Commissioner distinguishes the broad functional limitations as assessed in the PRT

22  with those contained within the Mental RFC (MRFC) Assessment:

01    The psychiatric review technique described in 20 CFR 404.1520a and 416.920a
      and summarized on the Psychiatric Review Technique Form (PRTF) requires
02    adjudicators to assess an individual's limitations and restrictions from a mental
      impairment(s) in categories identified in the "paragraph B" and "paragraph C"
03    criteria of the adult mental disorders listings. The adjudicator must remember
      that the limitations identified in the "paragraph B" and "paragraph C" criteria
04    are not an RFC assessment but are used to rate the severity of mental
      impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental
05    RFC assessment used at steps 4 and 5 of the sequential evaluation process
      requires a more detailed assessment by itemizing various functions contained in
06    the broad categories found in paragraphs B and C of the adult mental disorders
      listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

07

08    Social Security Ruling (SSR) 96-8p.  The Commissioner states that, in this case, the ALJ

09    appropriately followed the MRFC assessment of State agency consultant Dr. John Robinson,

10    who opined:  "Extended concentration may be interrupted but she can redirect her attention

11    when needed.   She retains the ability to do both [simple routine tasks] and complex."   (AR 18,

12    392.)[3]

13         Plaintiff fails to demonstrate error.   The Commissioner accurately distinguishes the

14    PRT and RFC assessments.   Moreover, none of the case law cited by plaintiff supports her

15    contention.   In *Thomas*, 278 F.3d at 956, the Ninth Circuit concluded that, in directing a VE to

16    credit the opinion of a medical expert who had just testified that the claimant had deficiencies of

17    concentration, persistence, or pace, the ALJ adequately included the assessed limitation into the

18    hypothetical.   The Seventh Circuit's decision in *O'Connor-Spinner*, 627 F.3d at 617-20, is

19    _____

20         3 Dr. Robinson included this opinion in the narrative portion of his report.  *See* Program
      Operations Manual System (POMS) DI 25020.010 at B.1 ("The purpose of section I . . . on the
21    [MRFCA] is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered
      each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for
      sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and
22    independent basis. It is the narrative written by the psychiatrist or psychologist in section III . . .  of [the
      MRFCA] that adjudicators are to use as the assessment of RFC.")

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 likewise distinguishable in that the error in that case lay in the ALJ's failure to include in the

02 hypothetical a moderate limitation on concentration, persistence, or pace explicitly included in

03 the RFC assessment.

04     The Eleventh Circuit and other circuit courts have considered and determined the

05 relevance of limitations assessed in the PRT to the RFC assessment.  *See*, *e.g.*, *Winschel*, 631

06 F.3d at 1180 ("Though the PRT and RFC evaluations are undeniably distinct, *see* 20 C.F.R. §§

07 404.1520a(d)(3), 416.920a(d)(3), nothing precludes the ALJ from considering the results of the

08 former in his determination of the latter.") (citing *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d

09 Cir. 2004) ("While SSR 96-8p, does state that the [PRT] findings are 'not an RFC assessment'

10 and that step four requires a 'more detailed assessment,' it does not follow that the findings on

11 the [PRT] play no role in steps four and five, and SSR 96-8p, contains no such prohibition."))

12 However, as the Eleventh Circuit recently confirmed: "[A]n ALJ's hypothetical restricting the

13 claimant to simple and routine tasks adequately accounts for restrictions related to

14 concentration, persistence and pace where the medical evidence demonstrates that the claimant

15 retains the ability to perform the tasks despite concentration deficiencies."  *Jarrett v. Comm'r*

16 *of Soc. Sec*., No. 10-13911, 2011 U.S. App. LEXIS 9621 at *6-7 & n.1 (11th Cir. Apr. 11, 2011)

17 (noting prior recognition of this finding in *Winschel*, 631 F.3d at 1180).

18     Similarly, the Ninth Circuit has found that "an ALJ's assessment of a claimant

19 adequately captures restrictions related to concentration, persistence, or pace where the

20 assessment is consistent with restrictions identified in the medical testimony."

21 *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (cited cases omitted).

22 Further, while not directly addressing the relevance of PRT-assessed limitations to the RFC

assessment, the Ninth Circuit upheld a lower court decision finding no error in an RFC restriction to simple and repetitive tasks, despite a step two and three finding of moderate difficulties in maintaining concentration, persistence, or pace. *Sabin v. Astrue*, No. 08-35338, 2009 U.S. App. LEXIS 12657 at *5-7 (9th Cir. Jun. 12, 2009). The Court explained that the medical evidence supported the conclusion. *Id.*

In this case, the ALJ relied on the medical evidence in assessing plaintiff as able to perform simple and some detailed/complex tasks. As observed by the Commissioner, the ALJ gave significant weight to Dr. Robinson's opinion that plaintiff was able to perform simple routine tasks and complex tasks. (AR 18, 392.) She also gave significant weight to the opinion of examining physician Dr. David Sandvik, who found plaintiff able to sustain concentration and pace. (AR 16, 374.) The ALJ's assessment and corresponding hypothetical, therefore, adequately captured restrictions related to concentration, persistence, or pace. *Stubbs-Danielson*, 539 F.3d at 1173-74.

### Physicians' Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

01  1983)).

02      The ALJ may reject physicians' opinions "by setting out a detailed and thorough

03  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

04  making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

05  881 F.2d at 751).   Rather than merely stating his conclusions, the ALJ "must set forth his own

06  interpretations and explain why they, rather that the doctors', are correct." *Id.*   (citing *Embrey*

07  *v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

08      Plaintiff avers that the ALJ erroneously evaluated the August 2007 opinions of

09  consultative examiner Dr. Sandvik.   Dr. Sandvik opined:

> There was a considerable incongruence between her presentation and her verbal
> representations.   At interview this day she did not appear depressed.   She
> exhibited in formal testing no incapacity with regard to reasoning,
> understanding or memory.   She appeared at interview able to sustain
> concentration and pace.   She made multiple deflections from questions but
> there appeared to be a volitional aspect to this.   She has marked difficulties with
> social interaction and often is in interpersonal conflict.   In all of these she
> alleges that she is victimized.   It is difficult from the perspective of psychiatry
> in terms of her formal mental status testing to find that she cannot work at this
> time.   She does have problems with stress and approaches to her should include
> stress management and anger management (though she denies that she has an
> anger problem.)   Antidepressant medication may be helpful for her.   Therapy
> should focus also on interpersonal skill related issues and self-responsibility.
> She appears able to manage any funds granted her herself at this time.

18  (AR 374.)   Plaintiff maintains that Dr. Sandvik opined as to "global" social limitations, while

19  the ALJ recognized only social limitations pertaining to the public (AR 14, 71).   She argues

20  that the ALJ failed to provide legally sufficient reasons for implicitly rejecting Dr. Sandvik's

21  broader opinion as to social limitations, while maintaining that Dr. Sandvik's opinions

22  supported her decision.   (AR 19.)

01    Plaintiff similarly avers that Dr. Robinson opined as to her global social limitations,

02  finding, in August 2007, that she needed "limited public and interpersonal contact."  (AR 18,

03  392.)  Plaintiff maintains that the ALJ, therefore, also failed to provide legally sufficient

04  reasons for rejecting Dr. Robinson's opinion.

05    Plaintiff acknowledges that the ALJ addressed her ability to work with coworkers:

06        The claimant can have interactions with coworkers.   The claimant testified that
        in 2007 she was going out dancing with friends.   However, even considering an
07        additional limitation of the need to work independently and with a small group
        of coworkers, the vocational expert testified that the claimant could still perform
08        the past relevant work of maid/housekeeper and order picker.

09  (AR 19.)  She argues, however, that these comments did not cure the defect.  Plaintiff notes

10  that the ALJ's comments did not account for any deficits in social interactions with supervisors

11  and maintains that the ALJ misstated the VE's testimony.  With respect to the latter point,

12  plaintiff asserts that the VE never testified she could work as an order picker either as actually

13  performed or as generally performed given the need to work with only a small group of

14  coworkers, that she actually performed that job under those circumstances, or that, as generally

15  performed, order pickers work in small groups of coworkers.  (AR 73-74.)  Plaintiff

16  additionally asserts that the VE was unable to identify any jobs plaintiff could perform when

17  asked about the vocational impact of an inability to work with co-workers.  (AR 79.)

18    As argued by the Commissioner, plaintiff fails to demonstrate error in the ALJ's

19  assessment of the opinions of Drs. Sandvik and Robinson.  After describing Dr. Sandvik's

20  report, the ALJ pointed to evidence in the record showing plaintiff "was getting out to the mall

21  and shopping[,]" planned on attending a Halloween party, went boating on the river with

22  friends, was able to use public transportation, visited with family and friends, and engaged in a

01 variety of activities with one particular friend, including assisting in taking care of pets, talking

02 daily, going shopping and to appointments, running errands, and watching her play video

03 games. (AR 17.) She thereafter gave significant weight to Dr. Sandvik's opinion that

04 plaintiff could work, finding it consistent with the medical evidence of record. (AR 18.) It

05 should also be noted that, while the ALJ did not discuss Dr. Sandvik's statement as to "marked

06 difficulties with social interaction and . . . interpersonal conflict[,]" he also did not discuss Dr.

07 Sandvik's statement that plaintiff "has some difficulty in social and other functioning, but she

08 does have friends; she does have some meaningful interpersonal relationships and interests."

09 (AR 373-74.)[4]

10      In addition, while the ALJ gave significant weight to Dr. Robinson's opinion, she

11 likewise gave significant weight to a June 2008 MRFC assessment signed by Dr. Vincent

12 Gollogly and finding plaintiff "could tolerate interaction with the general public and

13 coworkers." (AR 18, 392, 704.) The ALJ subsequently and specifically clarified her finding

14 that plaintiff could tolerate interactions with coworkers. Accordingly, the ALJ did provide

15 reasons supported by substantial evidence, including the opinion of a reviewing physician, for

16 rejecting a limitation in interacting with coworkers.

17      Plaintiff fails to cite evidence supporting a specific deficit in her ability to interact with

18 supervisors. There is nothing in Dr. Sandvik's report explicitly supporting such a limitation

19 (*see* AR 373-74), and the reports signed by Drs. Robinson and Gollogly found plaintiff not

20      4 Although also not noted in the ALJ's decision, Dr. Sandvik assessed plaintiff's Global

21 Assessment of Functioning (GAF) as 60, reflecting moderate symptoms or moderate difficulty in social, occupational, or school functioning, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR). Similarly, Dr. Robinson, in the checkbox portion of the form completed,

22 assessed plaintiff as moderately limited in her ability to get along with coworkers. (AR 391.) *But see* POMS DI 25020.010 at B.1 (discussed *supra*, n. 3.)

01 significantly limited in her ability to accept instructions and respond appropriately to criticism

02 from supervisors (AR 391, 703).

03    Because plaintiff fails to successfully challenge the ALJ's finding as to her social

04 limitations, the Court need not address her remaining arguments as to the ALJ's discussion of

05 her ability to perform her past work with the additional limitations of the need to work

06 independently and with a small group of coworkers.   However, in the interest of fully assessing

07 all of the arguments raised, the Court addresses the issue below in the discussion of the ALJ's

08 step four decision.

09                                    Side Effects

10    Plaintiff points to her testimony that she experienced drowsiness and similar symptoms

11 as side effects of her medications.  (AR 52-54, 57, 297.)  She maintains that substantial

12 evidence does not support the RFC assessment, hypothetical to the VE, adverse credibility

13 finding, or decision generally because the ALJ failed to evaluate the alleged side effects of her

14 medication, and failed to set forth any express reason for rejecting her testimony on this point.

15 In so doing, plaintiff relies on *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir. 1988).

16 In that case, the Ninth Circuit recognized that medication side effects can significantly impact

17 an individual's ability to work and held that, where an ALJ "chooses to disregard a claimant's

18 testimony as to the subjective limitations of side effects, he must support that decision with

19 specific findings similar to those required for excess pain testimony, as long as the side effects

20 are in fact associated with the claimant's medication(s)."  *Id*. *See also* 20 C.F.R. §§

21 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (ALJ must consider "type, dosage, effectiveness, and

22 side effects of any medication" taken to alleviate pain or other symptoms); SSR 96-7p (same).

01     The Commissioner argues that it is not enough for plaintiff to simply allege medication

02 side effects.    Pointing to *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985), the

03 Commissioner maintains that allegations of side effects from medications must be specific and

04 clinically supported, and that because plaintiff failed to produce such evidence, the ALJ was not

05 required to include alleged medication side effects in the RFC finding.

06     Plaintiff, in reply, asserts that while *Miller* upheld on substantial evidence review an

07 ALJ's finding of no side effects when the claimant "produced no clinical evidence showing that

08 narcotics use impaired his ability to work[,]" *id.*, it did not license a court to rely on that rational

09 as an improper post hoc rationalization.    She further denies that objective proof of a

10 medication side effect is required as a matter of law, observing that the regulations categorize

11 such effects as subjective, §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv), and expressly provide that

12 objective evidence of the subjective is not required, §§ 404.1529(c)(2), 416.929(c)(2).

13     The ALJ did not explicitly state in the decision that she rejected plaintiff's testimony as

14 to medication side effects.    However, the decision clearly reveals that, as required by the

15 regulations, the ALJ considered the testimony.   (*See* AR 15.)    The ALJ further rendered a

16 detailed credibility assessment supporting her conclusion that plaintiff's statements concerning

17 the intensity, persistence, and limiting effects of her symptoms were not credible to the extent

18 inconsistent with the RFC assessed.    For the reasons described below, reading the credibility

19 assessment and decision as a whole, plaintiff fails to demonstrate reversible error in relation to

20 the issue of medication side effects.

21     The ALJ discussed plaintiff's use of prescription medication in detail in the credibility

22 assessment, as well as evidence of her use of marijuana, cocaine, opiates, and barbiturates.

01 (AR 17-18.)  The discussion included one physician's notation that plaintiff had not been

02 truthful about her prescription drug use and another physician's description of plaintiff as "'a

03 frequent flyer, [with] visits to the ER for pain medication" and as "probably . . . a, kind of, drug

04 seeker[.]'"  (*Id.* (also describing incidents in which a prescription medication refill was denied,

05 an early refill was made through emergency care, and where plaintiff was advised that an

06 increase in dosage was not appropriate).)  The ALJ found that plaintiff's "drug-seeking

07 behavior, continued marijuana use, and occasional drug use" undermined her credibility.  (AR

08 17.)

09     The ALJ had previously discussed improvements in plaintiff's symptoms, including

10 evidence of "good" energy and that "[h]er energy level was 'finally getting better.'"  (*Id.*)

11 She also took into account plaintiff's variety of activities, as described above, and found them

12 consistent with an ability to work.  (*Id.*)  Considering these findings, and the ALJ's

13 subsequent consideration of the medical record, a clear inference can be drawn from the

14 decision as to the ALJ's rejection of plaintiff's testimony as to the side effects of her

15 medications.  *See generally Magallanes*, 881 F.2d at 755 (an "incantation" of the "magic

16 words, 'I reject [a physician's] opinion . . . because[,]'" is not required; the court may draw

17 "specific and legitimate inferences from the ALJ's opinion.")

18     This case is clearly distinguishable from *Varney*, wherein the ALJ rejected a claimant's

19 subjective pain and symptom testimony with a single sentence:  "The claimant's reports of

20 subjective symptoms and limitations are exaggerated over what is corroborated by the weight

21 of the objective medical evidence, and to this extent, her reports are not credible."  846 F.2d at

22 584-85.  In this case, the ALJ gave a number of clear and convincing reasons for rejecting

01 plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms. Her

02 failure to spell out the reasoning as it specifically related to the testimony regarding medication

03 side effects does not constitute reversible error. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217

04 (9th Cir. 2005) (finding no error in an ALJ's failure to explicitly address the drowsiness side

05 effect of a claimant's medications where, "[i]n making his RFC determination, the ALJ took

06 into account those limitations for which there was record support that did not depend on [the

07 claimant's] subjective complaints."; "Preparing a function-by-function analysis for medical

08 conditions or impairments that the ALJ found neither credible nor supported by the record is

09 unnecessary.") (citing SSR 96-8p). *See also Roquemore v. Comm'r of SSA*, No. 08-56894,

10 2010 U.S. App. LEXIS 4971 at *2-3 (9th Cir. Mar. 9, 2010) ("Roquemore argues that the ALJ

11 erred by failing to consider the side effects of his medications. However, Roquemore fails to

12 identify any objective evidence of side effects. He points only to his own subjective claims of

13 drowsiness and decreased concentration. Nothing in the record suggests that Roquemore's

14 ability to work was affected by his medications. Therefore, the ALJ was not required to include

15 a discussion of side effects.")

16 <u>Step Four</u>

17 Plaintiff avers that the ALJ was required by SSR 96-8p to make a function-by-function

18 comparison of the demands of her past relevant work as she actually performed it with her RFC,

19 and failed to do so in this case. She further avers that the ALJ failed to determine the mental or

20 physical demands of her past relevant jobs as either actually or generally performed, as required

21 by SSR 82-62.

22 RFC is the most a claimant can do considering his or her limitations or restrictions.

01   SSR 96-8p.   In assessing a claimant's RFC, the ALJ must identify plaintiff's functional

02   limitations or restrictions, and assess her work-related abilities on a function-by-function basis,

03   including a required narrative discussion.   *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.

04          Although plaintiff bears the burden at step four, the ALJ retains a duty to make factual

05   findings to support her conclusion, including a determination of whether a claimant can

06   perform the actual demands and job duties of her past relevant work *or* the functional demands

07   and job duties of the occupation as generally performed in the national economy.   *Pinto v.*

08   *Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (citing SSR 82-61).   "This requires specific

09   findings as to the claimant's [RFC], the physical and mental demands of the past relevant work,

10   and the relation of the [RFC] to the past work."   *Id*. (citing SSR 82-62).   A determination as to

11   a claimant's ability to perform past relevant work "must be developed and explained fully in the

12   disability decision[,]" and "every effort must be made to secure evidence that resolves the issue

13   as clearly and explicitly as circumstances permit."   SSR 82-62.

14          An ALJ may rely on two sources "to define a claimant's past relevant work as actually

15   performed: a properly completed vocational report, SSR 82-61, and the claimant's own

16   testimony, SSR 82-41."   *Pinto*, 249 F.3d at 845.   The Dictionary of Occupational Titles

17   (DOT) is generally considered the best source for determining how past relevant work is

18   generally performed.   *Id*. at 845-46.

19          In this case, the ALJ determined that plaintiff could perform a full range of work at all

20   exertional levels, limited only by the specific nonexertional limitations described above.   (AR

21   14.)   She thereafter stated that, in comparing plaintiff's RFC with the physical and mental

22   demands of her past relevant work as a maid/housekeeper and order picker, plaintiff could

01  perform those jobs as actually and generally performed.   (AR 19 (also stating that the jobs did

02  not require the performance of work-related activities precluded by the RFC).)

03      Plaintiff does not establish the ALJ's failure to comply with SSR 96-8p, which

04  addresses the assessment of a claimant's RFC, as opposed to the assessment of an individual's

05  ability to perform past relevant work, as is addressed in SSR 82-62.[5]   However, the ALJ's

06  decision does not include a finding of fact as to the physical and mental demands of plaintiff's

07  past relevant work as an order picker, or otherwise contain what could reasonably be construed

08  as a full explanation as to claimant's ability to perform that past relevant work.   The ALJ,

09  therefore, failed to comply with the requirements of SSR 82-62.

10      The Commissioner, citing *Lockwood v. Comm'r SSA*, 616 F.3d 1068, 1071-72 (9th Cir.

11  2010), avers that "a regulatory requirement to consider an issue does not impose a duty to

12  provide a detailed explanation of that consideration[,]" and that "[m]entioning and deciding the

13  issue is sufficient."   (Dkt. 22 at 14.)   Yet, there is nothing in *Lockwood* to support the

14  proposition that an ALJ, or this Court, may ignore the applicable SSRs.   *See* 616 F.3d at

15  1071-73 (discussing a plaintiff's arguments related to internal SSA policy and guidance

16  contained in the Commissioner's Hearings, Appeals, and Litigation Manual ("HALLEX") and

17  Program Operations Manual System ("POMS"), and finding no basis for plaintiff's claim that

18  the ALJ failed to comply with the applicable regulations).

---

19      5 SSR 96-8p does note that, because the first step four consideration is whether a claimant can
    perform past relevant work as actually performed, the RFC may not be expressed initially in terms of
20  broad exertional categories (i.e. "sedentary" or "light" work).   It goes on to state that RFC may be
    thereafter expressed in those terms "if it becomes necessary to assess whether an individual is able to do
21  his or her past relevant work as it is generally performed in the national economy."   SSR 96-8p.   It is
    not clear, however, that SSR 96-8p requires a "function-by-function *comparison* of the demands of a
22  claimant's past relevant work as actually performed with his or her [RFC,]" as argued by plaintiff.
    (Dkt. 18 at 13; emphasis added.)

01      SSRs are issued by the Commissioner to clarify the Commissioner's regulations and

02 policies.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they do not

03 have the force of law, they are nevertheless given deference "unless they are plainly erroneous

04 or inconsistent with the [Social Security] Act or regulations."  *Han v. Bowen*, 882 F.2d 1453,

05 1457 (9th Cir. 1989).  The Commissioner fails to demonstrate any basis on which the Court

06 could reasonably conclude that the ALJ was not required to consider the SSR requirements in

07 relation to plaintiff's past relevant work.

08      However, this matter need not be remanded on this issue.  That is, the question remains

09 as to whether the ALJ's error in failing to address the demands of plaintiff's past relevant work

10 can be deemed harmless.  *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155,

11 1162-63 (9th Cir. 2008) (where the ALJ provides specific reasons supporting an assessment and

12 substantial evidence supports the conclusion, an error in the assessment may be deemed

13 harmless; the relevant inquiry "is not whether the ALJ would have made a different decision

14 absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such

15 error.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004))

16 and *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (recognizing

17 application of harmless error in Social Security context where a "mistake was nonprejudicial to

18 the claimant or irrelevant to the ALJ's ultimate disability conclusion.")

19      At hearing, the VE testified she had reviewed the records regarding plaintiff's work

20 history and heard plaintiff's testimony.  (AR 70.)  Although plaintiff did not testify as to the

21 work she performed as an order picker (*see* AR 33-39 and 55-56), the record contained a

22 vocational report she completed regarding that job (AR 201, 204).  The VE identified and

01  described the jobs performed by plaintiff within the prior fifteen years by exertional level, skill

02  level, and DOT number.  (AR 70-71.)  The VE thereafter testified that plaintiff performed the

03  jobs identified as they are generally performed in the national economy, confirmed the

04  consistency of her testimony with the DOT, and opined that plaintiff, with the limitations as

05  assessed in the RFC, would be able to perform several of those jobs, including the job of order

06  picker.  (AR 70-73.)

07        Although not explicitly stated as such in the decision, it is apparent that the ALJ relied

08  on the VE's testimony in concluding plaintiff could return to her past relevant work.   An ALJ

09  may properly rely on the testimony of a VE in rendering a step four decision.  *See Bayliss*, 427

10  F.3d at 1217-18 ("A VE's recognized expertise provides the necessary foundation for his or her

11  testimony. Thus, no additional foundation is required.")   As described above, plaintiff fails to

12  demonstrate error in the ALJ's assessment of the medical record or her RFC, and, therefore, in

13  the corresponding hypothetical offered to the VE.   Accordingly, plaintiff does not demonstrate

14  how the VE's testimony could not be construed as substantial evidence supporting the ALJ's

15  step four decision.   As such, remanding this matter on this issue would arguably serve only the

16  purpose of requiring the ALJ to insert the VE testimony as to plaintiff's past relevant work and

17  her reliance on that testimony into the decision.   However, because the Court finds a remand of

18  this matter appropriate for the reason stated below, on remand, the ALJ should render a clear

19  finding of fact as to the physical and mental demands of plaintiff's past relevant work as an

20  order picker.

21        As indicated above, plaintiff fails to establish error in the ALJ's assessment of her social

22  limitations.   The Court nonetheless here briefly addresses plaintiff's arguments as to the ALJ's

01  conclusion that the VE's testimony supported a finding that plaintiff could perform her past

02  relevant work as an order picker even considering additional limitations of the need to work

03  independently and with a small group of coworkers.  (AR 19.)

04     The VE testified as follows:

05     Q     If the person were limited as far as working only with – either working
         independently and in an environment where there's just a small group of

06     coworkers, would they be able to perform that job?

07     A     . . . The order picker job, it really depends upon the size of the
         warehouse, I suppose.  The individual would go out and would pick certain

08     orders based on whatever sheets were given the worker, and then that worker
         would go and search for those particular items.  Working as a team is not

09     necessarily required to do that job, but there is going to be coworkers in the
         general area.

10

       Q     Are there some warehouse that are larger than others?  Some that may
11     have more employees –

12     A.     Yes, there are.  And it would be very difficult for me to estimate
         numbers.

13

14  (AR 73-74; the VE also stated it would be "nearly impossible" to specify the numbers of large

15  versus smaller warehouses given the "variations between employers and the economy.")

16  Later, when asked whether plaintiff could perform the jobs identified if required "some kind of

17  a structured setting where they wouldn't be working with any people[,]" the VE testified:

18     . . . These jobs do not require teamwork, as I explained to the judge.  However,
         there is going to be coworkers around.  If a person required a situation where

19     there was absolutely no one around, these jobs would not be accommodated in
         that way.  And in fact, I can't honestly think of any job that would be

20     accommodated.  Even if we went to a sheltered workshop, there's still going to
         be individuals in the area.

21

22  (AR 79.)

01          Again, the VE indicated she based her testimony on consideration of both plaintiff's

02     testimony and the record, which included plaintiff's vocational report, and opined that,

03     consistent with the DOT, plaintiff performed the jobs identified as they are generally performed

04     in the national economy.   The vocational report plaintiff completed does not include any

05     details regarding the social aspects of the order picker job, beyond the fact that she did not

06     supervise anyone and was not a lead worker.   (AR 201, 204.)   Yet, "[t]he claimant is the

07     primary source for vocational documentation, and statements by the claimant regarding past

08     work are generally sufficient for determining the skill level, exertional demands and

09     nonexertional demands of such work."   SSR 82-62.

10          In any event, even assuming an absence of sufficient information to support the

11     conclusion that plaintiff could perform the order picker job as she actually performed it in terms

12     of additional social limitations, an ALJ need not render "explicit findings at step four regarding

13     a claimant's past relevant work both as generally performed *and* as actually performed."

14     *Pinto*, 249 F.3d at 845 (emphasis in original).   In this case, plaintiff fails to establish that,

15     because the VE clarified that some order picker jobs would employ more people than others and

16     was unable to provide specific numbers of "larger versus the smaller warehouses" (73-74), the

17     ALJ lacked support for his conclusion that plaintiff could perform the order picker job as it was

18     generally performed.   The VE testified that, while there would be coworkers in the general

19     area while working as an order picker, the job did not necessarily require teamwork, and there

20     would be employers employing only a small number of employees.   (AR 73, 79.)   The ALJ's

21     finding that the VE's testimony supported the conclusion that plaintiff could still perform the

22     order picker job if she were limited to working independently and with a small group of

01 coworkers can be deemed a rational interpretation of the evidence.[6]

02 <u>Knee Condition</u>

03 Plaintiff maintains that the ALJ materially misstated the record in addressing her knee

04 condition. The ALJ stated:

> The claimant also has some reported knee problems from October 2007 through
> November 2007 related to a falling incident. On physical examination in
> November 2007, the claimant was in no acute distress. There was no obvious
> effusion in either knee. She had full range of motion bilaterally. X-rays were
> within normal limits. The claimant received a diagnosis of bilateral knee pain
> status post acute contusion. There are no other knee related complaints in the
> record and the claimant did not testify that she had any knee problems.

09 (AR 13.)

10 Plaintiff points to a May 2008 treatment note for left-knee pain in which Dr. Brent Thiel

11 advised plaintiff that her symptoms would "likely be exacerbated with stairs or ambulating on

12 inclines[,]" and prescribed a cane. (AR 951.)[7] Plaintiff also notes an August 2008 physical

13 therapy progress note reflecting treatment for chronic knee pain, left greater than right. (AR

14 938-40 (noting plaintiff "states that she uses a cane when walking long distance").)

15 Pointing to SSR 96-9p, plaintiff asserts that the use of a cane impedes the performance

16 of even sedentary work.[8] She maintains that the ALJ erred in failing to evaluate the evidence

17 ───────────────

18 6 The Court notes that, while the ALJ "may rely on the general job categories of the [DOT] . . .
as presumptively applicable to a claimant's prior work[,]" the claimant "may overcome the presumption

19 that the [DOT's] entry for a given job title applies to him by demonstrating that the duties in his
particular line of work were not those envisaged by the drafter of the category." *Villa v. Heckler*, 797
F.2d 794, 798 (9th Cir. 1986) (internal citations omitted). In this case, plaintiff failed to provide any

20 evidence overcoming the presumption.

21 7 These records, described by the ALJ as the best possible copies available, are very difficult to
read. However, plaintiff appears to accurately reproduce the statements quoted above.

22 8 SSR 96-9p states:

01  of her 2008 treatment, assessed limitations, and prescription of a cane.   *See Universal Camera*

02  *Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into

03  account whatever in the record fairly detracts from its weight."); 20 C.F.R. §§ 404.1527(d)(2),

04  416.927(d)(2) (requiring consideration of treating physician's opinion); SSR 06-3p (requiring

05  consideration of opinions from "other sources"); SSR 96-8p ("In all cases in which symptoms,

06  such as pain, are alleged, the RFC assessment must . . [c]ontain a thorough discussion and

07  analysis of the objective medical and other evidence[.]")

08          Plaintiff concedes that she did not address her knee condition at hearing.   However, she

To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

01 notes that she earlier mentioned her knee condition (AR 249 and 252), and that the ALJ did not

02 inquire about the condition at the hearing. She argues that, as a result of the ALJ's failure to

03 adequately address her knee condition, substantial evidence does not support the ALJ's finding

04 that she could perform work at all exertional levels during all twelve-month periods from the

05 alleged onset date (March 1, 2006) through the date of the decision (April 16, 2010). *See* 20

06 C.F.R. §§ 404.1509 & 416.909 (describing twelve-month duration requirement).

07 　　The Commissioner responds that plaintiff bore the burden of establishing a severe knee

08 impairment preventing her from performing substantial gainful activity and which lasted or was

09 expected to last for a period of twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§

10 404.1505, 404.1509, 416.905, 416.909; *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).

11 Also, an impairment will only be found severe if it "significantly limits" a claimant's ability to

12 perform basic work activities, 20 C.F.R. §§ 404.1520(c), 416.920(c), and a claimant for

13 disability benefits must bring to the Commissioner's attention everything showing she is

14 disabled, 20 C.F.R. §§ 404.1512(a) & (c), 416.912(a) & (c).

15 　　The Commissioner notes the ALJ's questioning at hearing as to the problems that

16 prevented plaintiff from working, and maintains that the ALJ reasonably inferred from

17 plaintiff's silence that her knee problems had resolved and did not last the requisite

18 twelve-month duration. (*See* AR 42.) He additionally takes note of statements in the May

19 2008 treatment note that 2007 studies of plaintiff's knees "were largely benign[,]" and that her

20 "right knee discomfort has completely resolved[,]" while she continued "to get some recurrent

21 popping and aching from the anterolateral aspect of the left knee." (AR 950.) Also, on

22 examination, plaintiff presented with a "fully weightbearing, nonantalgic gait[,]" some very

01 minimal discomfort with patellofemoral compression[,]" "good active range of motion[,]" and

02 "[g]ood 5/5 extensor and flexor strength." (AR 951.) The Commissioner observes the

03 absence of subsequent records showing a continuing knee problem or the continued need for

04 use of a cane, and plaintiff's own testimony that she only stopped going dancing in 2007 or

05 2008 (AR 50-51).

06      Given the ALJ's statement that there were no other knee related complaints in the record

07 beyond those dated in 2007, it is apparent she failed to consider the May 2008 treatment note

08 from Dr. Thiel and subsequent physical therapy progress note. Also, while plaintiff did not

09 testify as to any knee problems in the January 2010 hearing, she accurately notes her

10 identification of knee problems in a February 2008 Disability Report. (AR 249 (in answering

11 a question as to how her impairments limited her ability to work, claimant stated: "Claimant

12 has limitations involved with physical basic work activities as it relates to using her knees, she

13 is currently recovering from injury sustained to her knees from a fall.") and AR 252 (plaintiff

14 described October 2007 records from Dr. Miller for a consultation on her knee and stated she

15 received treatment in the form of "possible left knee surgery and physical therapy").) The

16 ALJ's failure to address the 2008 evidence, and particularly any need for the use of a cane, calls

17 both the ALJ's step two and step four decisions into question. *See Smolen v. Chater*, 80 F.3d

18 1273, 1290 (9th Cir. 1996) (an impairment or combination of impairments can be found 'not

19 severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

20 effect on an individual's ability to work.'") (quoting SSR 85-28) and 20 C.F.R. §§ 404.1545(e),

21 416.945(e); SSR 96-8p (ALJ must consider the limiting effects of all of plaintiff's impairments,

22 including those that are not severe, in determining a claimant's RFC).

01      The August 2008 physical therapy note is the latest dated document in the record

02  addressing plaintiff's knee problems, and reflects plaintiff's report that her knee symptoms had

03  not changed since onset, in October 2007.   (AR 938.)   The Commissioner, therefore, raises a

04  legitimate question as to whether the evidence relating to plaintiff's knee condition satisfies the

05  twelve-month durational requirement.   20 C.F.R. §§ 404.1509 & 416.909.   However, it is not

06  clear what conclusion the ALJ would have reached on this issue had she been aware of the later

07  evidence of plaintiff's knee problems.   Accordingly, on remand, the ALJ should consider all of

08  the evidence in the record in assessing the severity of plaintiff's knee-related impairments,

09  including both the 2008 medical evidence and plaintiff's February 2008 statements as to

10  knee-related limitations.

11  **<u>CONCLUSION</u>**

12      For the reason set forth above, this matter should be REMANDED for further

13  administrative proceedings.

14      DATED this <u>1st</u> day of July, 2011.

15

16

17  Mary Alice Theiler
    United States Magistrate Judge

18

19

20

21

22